[No. 1788.]

### Nabe McAfee *v.* The State.

1. Theft — Evidence.— Having, in his attempt to impeach a State's witness, resorted to all of the methods recognized by law, the defendant in a theft case sought to prove that the witness had harbored certain horse thieves. The trial court sustained the State's objection to this proof. *Held*, correct.

2. Same— Charge of the Court— Fact Case.— One of the defenses relied
upon was the purchase of the alleged stolen animal, evidenced by a bill of
sale. In substance the trial court charged that, if the jury believed that the
defendant did so purchase the animal, he should be acquitted, notwithstand-
ing he may have known that his vendor stole it. In addition to this charge,
the court instructed the jury, in substance, that if they believed that the
animal was stolen by the defendant's vendor, and that the defendant pur-
chased it with knowledge of that fact, and took possession of it, and that
the animal afterwards escaped from his custody, and returned to its owner's
possession, and that the defendant, on or about the date specified in the in-
dictment, took the animal fraudulently from the possession of the owner,
knowing at that time, and at the time that he made the purchase, that the
said animal was stolen by his vendor, he was guilty of the theft of the
animal. *Held*, that the two charges are not only consistent, but that they
announce correct propositions of law. See the statement of the case for
evidence *held* to warrant the charge last quoted, and all-sufficient to sustain
a conviction for the theft of a cow.

Appeal from the District Court of Navarro. Tried below before
the Hon. L. D. Bradley.

The indictment in this case, charging the theft of H. Hailey's
cow, in Navarro county, Texas, on the 25th day of October, 1882,
was joint against the appellant and one John Bassett. The death
of Bassett being suggested, the trial of the appellant was proceeded
with, and resulted in his conviction, upon which he was awarded a
term of two years in the penitentiary as punishment.

This case was reversed and remanded by this court on the 7th
day of November, 1883. (See 14 Texas Ct. App., 668.) A com-
prehensive synopsis of the testimony of the witnesses who testified
on both trials is given in that report. A *resumé* only, of such addi-
tional evidence as was adduced on this trial, is here appended.

P. L. Adams testified, for the State, that he knew the defendant
and Hiram Hailey, the prosecuting witness. He heard that Hailey
had lost a pale red cow, branded 76, connected and marked with a
swallow-fork and underbit in the right and a crop in the left ear.
Witness sold Hailey such a cow, having first made the change to
the mark described from a swallow-fork and underbit in the right
and two underbits in the left ear. Witness made this change in
1880, a short time after he got the animal, which was about two
years before he sold her to Hailey. After this sale to Hailey the
cow ranged between Hailey's and the witness's house, the two
houses being about three miles apart. This cow had a calf when
witness sold her to Hailey. The witness was on the range on
the day that the cow is said to have been taken, and saw two per-
sons near Hailey's place, driving a red cow. Witness was not near

enough to identify the cow, but he took her drivers to be the defendant and John Bassett. This was about two miles from Hailey's house. The parties were driving the cow northeast towards Corsicana. The witness has not since seen the cow he sold Hailey on the range.

Sam Black testified, for the defense, that he remembered the meeting of Hailey, the defendant and Bassett when the controversy about the cow arose. Hailey asked the witness if he knew his, Hailey's, cow. Witness replied that he did not, but that he had seen the cow the parties were disputing about once before. Hailey wanted defendant and Bassett to drive the cow back to his place, but they declined. Hailey refused to accept Bassett as security for the cow, and witness became responsible, to the amount of $25. The understanding was that Hailey was to retain the money paid him by witness, should the cow not be forthcoming, and that if she was returned to him, he was to repay the witness the $25. Witness paid Hailey the money, and the defendant has since paid the witness.

T. Swink testified, for the defense, that he and Tom Black saw a pale red cow, marked with a crop off the right and a swallow-fork and underbit in the left ear, about four miles from Hailey's place, in September, 1882. They threw her down and looked for a brand. Witness saw the same cow twice afterwards. The witness and the defendant went together to get up some cows which the defendant had bought, and they drove this cow with two others by Hailey's house, in open daylight, to Henry Swink's pen. John Bassett and the defendant drove this and two other cows to town, and a day or two afterwards witness heard of this trouble. Some time after this trouble, the witness saw the cow involved in this controversy on Elm Creek. Witness and defendant, when driving this cow, made no effort to conceal her.

J. L. Black testified, for the defense, that he saw Hailey at his, witness's, house on the night of the day that the parties met and had their first controversy about the cow. Hailey said that he had sold his place for twenty-five bales of cotton, and that he expected to spend it all attending court. He said, also, that Sam Black stood good for the cow, and that Jesse Grice had offered $20 for the cow without having seen her. Dave Jones was living at witness's house when this conversation took place.

Dave Jones testified, for the defense, that he overheard Hailey say that he had sold his place for twenty-five bales of cotton, and would put the defendant in the penitentiary if it cost all of it. He

said, also, that he had been offered $20 for the cow by Grice before he had ever seen the cow. These two statements, Hailey, on this trial, denied that he ever made, either to Jones or J. L. Black.

A. F. Black testified, for the defense, that he was at Hailey's house during Christmas week, 1880, and once in 1881 or 1882. On neither occasion did he see in Hailey's pen a cow answering the description of the cow involved in this controversy. Hailey sustains a bad reputation, and the witness would not believe him on oath.

Jesse Grice, cousin and brother-in-law to Hailey, testified for the defense that he was at Hailey's pens a few times in 1881 and 1882, but never saw a cow in his pen answering the description of the cow in controversy. Witness was not related to the defendant. Defendant's brother and witness were brothers-in-law. The present hard feeling between witness and Hailey did not exist prior to this trouble. Barrington, without describing the animal, told witness that Hailey had a fat cow he wanted to sell for $20. Witness offered Hailey $20 for the cow.

William Johnson testified, for the defense, that in 1882 he saw a pale red cow in the possession of Hailey, but he did not examine her marks or brand. Hailey's reputation for truth and veracity in his neighborhood was not good.

J. V. Carter testified, for the defense, that he was Grice's brother-in-law. He knew that there was among Hailey's bunch of cattle a pale red cow. Witness did not know that Hailey owned that animal nor did he ever notice her brand or mark. Witness did not tell Payne that he knew that cow as well as he did one of his own cattle.

Hiram Hailey was recalled by the State in rebuttal. He testified that Henry Swink testified on the last trial that the cow, when he saw her last, was in the same mark she was in when he first saw her. George Lee, who assisted in changing the mark, was then here to contradict this statement of Henry Swink. Tom Black testified that it was three miles from witness's house to the point where he threw the cow down to examine her for brands. The brand on the cow in controversy was small but plain enough to be seen by any one who has eyes. This cow was in the witness's pen every night from the time he purchased her until October 24, 1882. A. F. Black has talked against the witness all over the settlement, the larger part of which is composed of the Blacks and Grices.

George Lee testified, for the State, that he knew the cow in controversy. She was sold by Adams to Hailey in the spring of 1881. Witness and Pete Adams altered her marks late in 1879 or early in

1880, by changing two underbits in the right ear to a crop. Witness knew Hailey's reputation for truth and veracity to be good. He had never heard his reputation assailed except by the Blacks and Grices.

Bob Lee testified, for the State, that Hailey's reputation for truth and veracity was good, and named persons he had heard talk of it. He knew the cow Hailey bought from Adams. She was a pale red animal, branded 76 connected, and marked with a crop off the right and a swallow-fork and underbit in the left ear.

Quite a number of witnesses testified that Hailey's reputation for truth and veracity was good. No one testified that it was ever challenged except by the Blacks and Grices.

The motion for new trial raised the questions considered in the opinion.

*William Croft*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. Appellant stands convicted of the theft of a cow, the property of H. Hailey.

We have examined very carefully all the grounds relied on for a reversal of the judgment in this case, but find no such error in the record as will require a reversal of the same. Two matters, however, are presented in the record in regard to which we desire to express our views.

1. H. Hailey was a very important witness for the prosecution; in fact, upon his evidence the State mainly relied for a conviction. Defendant tried to impeach him by all the modes possible under the rules of law, and also by proof that he had harbored one Allison and one Lee, who were horse thieves. To this evidence the State, by her attorney, objected, and the court sustained the objection; to which defendant excepted and reserved his bill. Was there error in this? Evidently there was not.

2. Defendant attempted to meet the State's case by proof of purchase of the cow, and a bill of sale from one Williams for the cow alleged to have been stolen by him. The learned judge below, bearing upon this subject, charged the jury as follows:

" 6. If you believe from the evidence that said cow was not the property of the said Hailey, or that defendant purchased it from one Williams, and took and held possession of it by reason of such purchase and the bill of sale introduced, although you may believe from the evidence that it had been stolen by the said Williams, and

that defendant knew it was stolen by Williams, you are instructed that such taking by the defendant would not constitute theft, and in that case you will find him not guilty.

"7. But if you believe from the evidence, beyond a reasonable doubt, that said cow was stolen by the said Williams; that it was purchased by the defendant with the knowledge, at the time, it was stolen; that it afterwards got out of defendant's possession, and returned to the possession of the owner, and that defendant, on or about the date specified in the indictment, fraudulently took it from the possession of the owner, knowing at the time of the purchase and at the time of the taking, if any, that the cow was the property of the said Hailey, and had been stolen by the said Williams, you are instructed that such taking would constitute theft of the animal, and in such case you should find defendant guilty, and assess his punishment as above instructed."

Counsel for appellant objects to charge 7, because it is in conflict with charge 6; insisting that charge 6 contains the law, and all the law bearing upon this subject. Counsel for appellant, also, objects to charge 7 because it has no support in the evidence, or any part of the evidence.

Are the charges in conflict? Most evidently they are not. Charge 7 is not only in harmony with charge 6, but it announces a proposition of law which is just and correct.

Is there any evidence in the record forming a basis for such a charge? In the view we take of the evidence in this case, to our minds, clearly there is such evidence. (The Reporter will give the statement of facts.)

As above stated, we have given this record a most careful examination, and must say, if there be reversible error, we have not been able to discover it. The judgment is affirmed.

*Affirmed.*

[Opinion delivered November 15, 1884.]